UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-360-GWU

RHONDA C. WELLS, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Rhonda Wells brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

07-360  Rhonda C. Wells

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a <u>de minimis</u> hurdle in the disability determination process.  <u>Murphy v. Secretary of Health and Human Services</u>, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." <u>Farris v. Secretary of Health and Human Services</u>, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  <u>Id</u>., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.  <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-360  Rhonda C. Wells

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron

07-360  Rhonda C. Wells

v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Wells, a 44-year-old former office manager, account clerk and billing clerk with a high school education, suffered from impairments related to a history of Rocky Mountain fever with residuals. (Tr. 15, 19-20).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels.  (Tr. 16, 19). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 20). The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Bill Ellis included a limitation to simple, repetitive tasks or instructions in a low social demand setting

4

with no exertional restrictions. (Tr. 412). In response, the expert identified a significant number of jobs which could still be performed. (Tr. 412-413). Therefore, assuming that the vocational factors considered by Ellis fairly characterized Wells' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to Wells's mental status, Dr. Suresh Kodali examined her and diagnosed a dysthymic disorder. (Tr. 287). Dr. Kodali opined that the plaintiff would not be able to perform complex instructions, but would be capable of understanding, remembering, and completing simple, one-to-two step tasks. (Tr. 288). The claimant would not be impaired in relating to co-workers and supervisors, dealing with normal work stresses, and maintaining attention and concentration in such a setting. (Id.). The mental factors of the hypothetical question were consistent with this opinion.

Wells sought treatment for her mental problems at the Cumberland River Comprehensive Care Center. Dr. John Schremly, the staff psychiatrist, diagnosed an amnesiac disorder due to Rocky Mountain Spotted Fever, a chronic cognitive disorder and a possible mood disorder. (Tr. 361). Dr. Schremly did not assess specific mental limitations. He did note a Global Assessment of Functioning (GAF) rating of 65. (Id.). Such a GAF suggests the existence of only "mild" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and</u>

Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  The ALJ's findings would be consistent with this opinion.

Michelle Mattingly, a neuropsychologist, evaluated Wells on two occasions. (Tr. 290-299).  During the first testing session in February of 2004, the plaintiff's effort was noted to be good and the examiner opined that she had intact cognition imposed on low average intellectual and reading abilities.  (Tr. 298).  During the testing in September of 2005, Mattingly indicated that Wells gave a suboptimal effort and the testing results were considered an underestimate of actual cognitive ability.  (Tr. 292).  Mattingly did not identify the existence of more severe mental restrictions than those found by the ALJ, and, so, this report does not support the plaintiff's claim.

Psychologists Jan Jacobson (Tr. 320) and Edward Stodola (Tr. 336), the non-examining medical reviewers, each opined that Wells's mental problems did not constitute a "severe" mental impairment.  Their findings provide additional support for the administrative decision.

With regard to Wells's physical condition, the ALJ imposed no restrictions. The plaintiff argues that this action was erroneous, citing the opinion of Dr. Mitchell Carl, a treating source.  Dr. Carl completed a Medical Source Statement of Ability to do Work-Related Activities upon which he identified a number of very severe physical restrictions including an exertional limitation to less than a full range of sedentary level work and ability to stand or walk for less than two hours a day and

sit for less than six hours a day. (Tr. 302-305). The ALJ rejected Dr. Carl's opinion as binding due to a number of reasons cited in his opinion. The ALJ noted that this opinion was not supported by any objective medical data and appeared to be based entirely upon the claimant's subjective complaints. (Tr. 19). The ALJ noted that Wells indicated during her hearing testimony that in completing the form, Dr. Carl's nurse merely recorded her answers to the questions on the form and the physician then signed it. (Id.). The ALJ also noted that the severe restrictions indicated on the assessment contrasted with her wide-ranging daily activities which included cooking, cleaning, crocheting, shopping, and caring for a horse. (Id.). Under the circumstances of this case, the ALJ's action appears appropriate.

     Wells did arguably testify that the nurse wrote down her answers to the questions on the assessment form during her evaluation while the doctor was examining her. (Tr. 392). The assessment form contains no references to objective medical findings which would support the restrictions--all of the limitations appear to be based on her subjective complaints such as dizziness, shortness of breath, fatigue and nausea. (Tr. 302-305). The comments concerning the restrictions are worded in such a way as to strongly suggest that the questions are being answered according to her complaints rather than the physician's professional opinion. For example, statements the plaintiff gives such as she "reports dizziness," she "reports numbness, tingling" are cited as support for the limitations. (Tr. 303-304). The doctor's treatment notes actually indicate that the plaintiff repeatedly denied

dizziness during her regular office visits not connected to the completion of a disability form. (Tr. 308, 311, 314). Dr. Carl reported that an MRI Scan of the brain had been negative. (Tr. 306). Muscle strength was repeatedly reported to be intact upon physical examination. (Tr. 308, 312, 314). Thus, Dr. Carl's own treatment notes do support the extreme physical limitations checked on the assessment form.

Other medical evidence of record also indicates largely normal objective findings. Dr. Arden Acob, a neurologist to whom Dr. Carl referred Wells, obtained EMG/NCV testing of the lower extremities which revealed normal findings with no sign of neuropathy, plexopathy or radiculopathy. (Tr. 175). Despite her complaints of memory loss, Dr. Acob reported that recent and remote memory were intact upon physical examination. (Tr. 178). The plaintiff underwent a cardiac work-up at the Baptist Regional Medical Center due to complaints of chest pain. An EKG was normal. (Tr. 186). A stress test was negative for significant exercise-induced ischemia. (Id.). Her probability of suffering from coronary artery disease was said to be low. (Id.). Left heart catheterization at Central Baptist Hospital revealed no sign of coronary artery disease. (Tr. 280).

Dr. Joseph Kwentus, a specialist in neurology and psychiatry (Tr. 376), responded to interrogatories submitted by the ALJ following the administrative hearing. Dr. Kwentus opined that the plaintiff's multiple complaints did not have a "clear medical origin." (Tr. 374). None of the sections of the Listing of Impairments would be met or equaled by the evidence currently in the record. (Id.). The ALJ

07-360 Rhonda C. Wells

specifically presented the hypothetical factors to Dr. Kwentus who responded that the record did not support the existence of additional functional restrictions. (Tr. 375). This opinion provides strong support for the administrative decision.

Wells argues that the ALJ erred in failing to cite specific reasons why her testimony was not considered credible. However, the ALJ cited a number of specific reasons for this finding. The ALJ noted her claims of memory loss but observed the lack of physical findings, such as the normal brain MRI Scan which failed to reveal a physical cause for this problem. (Tr. 17). The ALJ also cited Dr. Acob's finding of no recent or remote memory loss as well as his normal EMG/NCV studies. (Id.). With regard to her mental condition, the ALJ noted the modest findings of Dr. Kodali, Mattingly and Dr. Schremly. (Tr. 18-19). Therefore, the court finds that the ALJ adequately reported the reasons for his finding with regard to the credibility of the plaintiff's testimony.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 24th day of July, 2008.



**Signed By:**
*G. Wix Unthank*
**United States Senior Judge**